# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

In the Matter of the Seizure of )
)
Up to $15,000.00 in money, funds, and financial )
instruments deposited or credited to UMB Bank )    Case No. 4:20MJ6238 PLC
account #...8055 held in the name of Phillip Lee )
Williams & Pamela Kay Williams )

## APPLICATION AND AFFIDAVIT FOR SEIZURE WARRANT

**I, J. Wade Beach, being duly sworn depose and say:**

**I am a Special Agent with the Federal Bureau of Investigation, and have reason to believe that there is now certain property namely**

Up to $15,000.00 in money, funds, and financial instruments deposited or credited to UMB Bank account #...8055 held in the name of Phillip Lee Williams & Pamela Kay Williams

**which is**

subject to forfeiture under Title 18, United States Code, Sections 981(a)(1) and 982(a)(1) and Title 28, United States Code, Section 2461, and therefore, is subject to seizure under Title 18, United States Code, Sections 981(b)& 982(b) and Title 21, United States Code, Sections 853(e)&(f) concerning violations of Title 18,United States Code, Sections 1343 and 1957.

The funds identified herein are subject to civil forfeiture without regard to their traceability to criminal activity because they are contained in an account into which identical traceable property has been deposited and therefore may be forfeited as fungible property under Title 18, United States Code, Section 984.

**The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are as follows:**

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

**Continued on the attached sheet and made a part hereof.**     X   **Yes** _____ **No**

SA J. Wade Beach
**Signature of Affiant**, J. Wade Beach

**Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41**

October 13, 2020
***Date and Time Issued***

Honorable Patricia L. Cohen, U.S. Magistrate Judge
**Name and Title of Judicial Officer**

at   St. Louis, Missouri
**City and State**

*Patricia L. Cohen*
**Signature of Judicial Officer**

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEIZURE WARRANT

I, J. Wade Beach, Special Agent, Federal Bureau of Investigation, being duly sworn, depose and state as follows:

## INTRODUCTION AND BACKGROUND

1.      I, J. Wade Beach, am a Special Agent with the Federal Bureau of Investigation and have been so employed for the past 18 years.  I am assigned to the St. Louis, Missouri, field office where I have specialized in white collar crime and fraud investigations of various kinds.  I am responsible for, among other assignments, conducting investigations of alleged criminal violations of Title 18, United States Code, Sections 1343, wire fraud, and money laundering, including Sections 1956 and 1957.

2.      I have personally participated in investigations involving the violations of federal law regarding bank fraud, wire fraud and other federal violations such as money laundering that result from such unlawful activity.  I have personally participated in the execution of search warrants and seizure warrants, involving the search for various types of evidence and property.  As a federal agent, I am authorized to investigate violations of the laws of the United States and to seek forfeiture of property under the authority of the United States.

3.      The Offices of the Inspector General for the U.S. Small Business Association and Federal Deposit Insurance Corporation working with the Federal Bureau of Investigation ("FBI") have been investigating a fraud scheme involving Robert W. Williams ("Williams") and several entities that he is associated with, including Snappy's International Holding, LLC, and Tasty Brands Enterprize LLC, for violations: of wire fraud (18 U.S.C. § 1343), money laundering (18 U.S.C. § 1957), and conspiracy to commit violations of wire fraud, and money laundering (18

1

U.S.C. §§ 371, 1349, 1956(h)) (collectively referred to hereinafter as the "Subject Offenses") by and through a scheme to defraud and obtain Paycheck Protection Program ("PPP") loan proceeds by filing false and fraudulent PPP loan applications with participants in the PPP program. Based on the results of this investigation, there is probable cause to believe that, between approximately May 1, 2020, and August 31, 2020, Williams and his associates fraudulently obtained $1,026,000.00 through such scheme, and that Williams used some of these criminal proceeds to transfer funds between various financial accounts in violation of Title 18, United States Code, Section 1957. As such, the property described in Attachment A is subject to civil and criminal forfeiture.

4.      This affidavit does not contain all of the information known to me in regard to the investigation; however, it contains enough information to establish probable cause to authorize the seizure of the property described in Attachment A.

## STATUTORY FRAMEWORK

5.      18 U.S.C. § 1343 (wire fraud) criminalizes devising or intending to devise a scheme to defraud (or performing specific fraudulent acts) through the use of an interstate telephone call or electronic communication.

6.      18 U.S.C. § 1957 (the money laundering spending statute) criminalizes knowingly engaging or attempting to engage in a monetary transaction in criminally derived property from a specified unlawful activity (including mail and wire fraud) in an amount greater than $10,000.

7.      The proceeds of wire fraud are subject to forfeiture under both civil and criminal forfeiture authorities. Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to wire fraud is subject to civil forfeiture. In addition, 28 U.S.C. § 2461(c) provides that, "[i]f a person is charged in a criminal case with a

violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized," then the government can obtain forfeiture of property "as part of the sentence in the criminal case." Thus, pursuant to 28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to wire fraud is subject to criminal forfeiture.

8.      Property involved in a money laundering offense is subject to forfeiture under both civil and criminal forfeiture authorities. Pursuant to 18 U.S.C. § 981(a)(1)(A), any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957, or any property traceable to such property, is subject to civil forfeiture. In addition, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in a violation of 18 U.S.C. § 1957, or any property traceable to such property, is subject to criminal forfeiture. Forfeiture pursuant to these statutes applies to more than just the proceeds of the crime. These forfeitures encompass all property "involved in" the crime, which can include untainted funds that are comingled with tainted funds derived from illicit sources.

9.      This application seeks a seizure warrant under both civil and criminal authority because the property to be seized could be placed beyond process if not seized by warrant.

10.     Pursuant to 18 U.S.C. § 981(b), property subject to civil forfeiture may be seized by a civil seizure warrant issued by a judicial officer "in any district in which a forfeiture action against the property may be filed," and may be executed "in any district in which the property is found," if there is probable cause to believe the property is subject to forfeiture. A civil forfeiture action may be brought in any district where "acts or omissions giving rise to the forfeiture occurred." 28 U.S.C. § 1355(b)(1)(A). As detailed below, acts or omissions in furtherance of the fraud and money laundering scheme under investigation occurred in the Eastern District of

3

Missouri. The criminal forfeiture statute, 18 U.S.C. § 982(b)(1), incorporates the procedures in 21 U.S.C. § 853 (other than subsection (d)) for a criminal forfeiture action. 21 U.S.C. § 853(f) provides authority for the issuance of a seizure warrant for property subject to criminal forfeiture.

11.     Based on the foregoing, the issuance of this seizure warrant is authorized under 21 U.S.C. § 853(f) and 18 U.S.C. § 982(b)(1) for criminal forfeiture; and 18 U.S.C. §§ 981(b) and 984 for civil forfeiture. Notwithstanding the provisions of Rule 41(a) of the Federal Rules of Criminal Procedure, the issuance of this seizure warrant in this district is appropriate under 18 U.S.C. § 981(b)(3) and 28 U.S.C. § 1355(b)(1) because acts or omissions giving rise to the forfeiture occurred in the Eastern District of Missouri.

## PROBABLE CAUSE

### The CARES Act and PPP Loans

12.     The U.S. Small Business Administration ("SBA") is an executive branch agency of the United States that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government backed guarantees.

13.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through PPP. In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

4

14.     In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business to a lender that was participating in PPP. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. One affirmative certification required the business to certify that it was in operation on February 15, 2020 and had employees for whom it paid salaries. Further, in the PPP loan application, the applicant (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, the applicant was required to provide documentation showing its payroll expenses.

15.     A business's PPP loan application was received and processed, in the first instance, by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which are guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the Small Business Administration ("SBA") in the course of processing the loan.

16.     PPP loan proceeds were required to be used by the business on certain permissible expenses: payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time after receiving the proceeds and used a certain amount of the PPP loan proceeds on payroll expenses.

The Subject PPP Loans

5

17.    The United States is investigating Robert Williams ("Williams") for violations of the Subject Offenses by and through a scheme to defraud and obtain Paycheck Protection Program ("PPP") loan proceeds by filing false and fraudulent PPP loan applications with participants in the PPP program, including: Justine Petersen Housing and Reinvestment Corporation, which is a not-for-profit participating lender based out of St. Louis, Missouri, that specializes in advancing financial asset development among low and moderate-income individuals and families ("Lender");[1] and a financial institution based out of Festus, Missouri.

18.    Between approximately June 23, 2020, to August 8, 2020, Williams was associated with approximately 30 different PPP loan applications by and through Lender. Agents are actively investigating these loans. The below chart shows five of those PPP loan transactions, totaling $1,026,000, that are relevant to this seizure warrant application:

| Business | Address | Signor | Alleged Number of Employees | Date PPP Loan Signed | Amount of Loan (Initial Request) | Amount of Loan (Actual Payment) |
|---|---|---|---|---|---|---|
| Snappy's Int'l Holdings | 5662 Martin Luther King Blvd., St. Louis, MO 63146 | Robert Williams Sr. | 16 | 6-1-2020 | $112,500 | $90,000 |
| Tasty Brands Enterprize | 8422 North Lindbergh Blvd., Florissant, MO 63031 | Phillip Williams | 14 | 7-7-2020 | $239,367 | $186,000 |
| International Products Group | 2501 Minnesota Ave., St. | Joe Morris | 15 | 7-10-2020 | $325,000 | $250,000 |

[1] Lender has also been delegated authority by SBA to administer loan programs on behalf of SBA for eligible borrowers.

| | Louis, MO 63104 | | | | | |
|---|---|---|---|---|---|---|
| Club TV One LLC | 626 S. Fillmore Ave., St. Louis, MO 63122 | Pamela Rue | 14 | 7-18-2020 | $462,500 | $250,000 |
| Afshari Enterprises LLC | 3160 Pershall Road, St. Louis, MO 63136 | Christopher McMiller | 14 | 7-29-2020 | $412,500 | $250,000 |

19.     Williams' associations with the businesses that received these PPP loans are as follows:

a.      **Snappy's Int'l Holdings**: Williams is listed as an Organizer for the State of Missouri Articles of Organization.  The other Organizer is listed as International Product Groups/Robert Williams.  In the PPP Borrower Application Form, Williams is listed as the 100 percent member owner. Williams' address is listed as 626 S. Fillmore Avenue, St. Louis, MO. This address is also listed as Williams' residence on his Missouri Driver's License.

b.      **Tasty Brands Enterprize**: Robert Williams is listed as an Organizer on the State of Missouri Articles of Organization.  In the PPP Borrower Application Form, Phillip Williams is listed as the 100 percent owner, with a listed address of 626 S. Fillmore Avenue.

c.      **International Products Group**: Williams is listed as an Organizer on the State of Missouri Articles of Organization.  The registered agent for this entity (P.B.), lists an address of 626 S. Fillmore Avenue, St. Louis, Missouri 63122.

d.      **Club TV One LLC**: Williams is listed as an Organizer on the State of Missouri Articles of Organization.  One of the other Organizers (G.R.) who is also the Registered Agent

7

lists 626 Fillmore Avenue, St. Louis, MO for the address. In the PPP Borrower Application Form, P.R. is listed as the 100 percent owner, with a listed address of 626 S. Fillmore Avenue.

     e.     **Afshari Enterprises LLC:** A Robert C. Williams (listed address: 350 S. St. Charles Street, Florissant, Missouri 63031) is listed as an Organizer and as the Registered Agent (Note: The Robert Williams listed throughout this affidavit as being a focus of the investigation is Robert W. Williams.)

     20.     Before discussing specific accounts in the next section of this affidavit, there are several types of general evidence that indicate that all of the PPP loan transactions are fraudulent. Using the information from the PPP applications discussed above, agents determined that:

     a.     The address for Snappy's International is an abandoned building (see **Exhibit A**);

     b.     The address for Tasty Brand's is a closed storefront in a strip mall (see **Exhibit B**);

     c.     The addresses for International Products and Club TV, are residences that are located in residential neighborhoods (see **Exhibits C and D**). The Fillmore address is titled in the name of a living trust for an individual with the initials E.R., and has a living area of 1321 square feet according to St. Louis County real estate records.

     d.     The address for Afshari is a two story office/commercial structure with the words "Stores and Offices" on the signage (see **Exhibit E**).

     21.     None of the listed addresses have any signage identifying the businesses that allegedly use these addresses, or any vehicles parked near the buildings that have any signage regarding these businesses.

     22.     The PPP applications show that the same employees appear in different applications for different businesses. When examining the "Payroll Summary Log's" in the applications, employees are listed with last name and first name or initial, except on Snappy's payroll summary

8

log. The formatting of the employee information is very similar between the different applications. For example, "Sumary" is misspelled in each of the payroll summary logs for Afshari, Club TV One, International Products, and Tasty Brandz. Employees for the businesses of Afshari, Club TV 1, International Products Group, Snappy's, and Tasty Brands all have one or more employees that appear on the payroll summary of one or more of the other companies. Examples of this pattern include:

- G.T. is listed as an employee of Snappy's, International Products Group, and Tasty Brands;

- J.P. is listed as an employee of Snappy's, Club TV, Tasty Brands;

- M.H. is listed as an employee of Afshari and Club TV; and

- L.J. is listed as an employee of Snappy's and International Products Group.

23.     In addition, some of the PPP loan proceeds were used for payments to auto dealers, which are not eligible or allowed expenses for PPP loans. For example, from the $186,000 PPP loan to Tasty Brands Enterprize LLC, $6,000 was paid to Bommarito Chevrolet Mazda (via check dated 8/11/20), and another $27,000 was paid to Olympic Motor Company (via cashier's check dated 8/25/20 with memo "Robert Williams Company Car").

24.     Agents subpoenaed employment records from the Missouri Department of Labor Relations regarding the businesses identified in the PPP loans discussed above. Generally, employers periodically report information and pay premiums regarding employees to the State in order to enable the employees to obtain unemployment compensation later. The State of Missouri responded to the subpoena on October 5, 2020. According to these records, Snappy's International has been inactive since 2013. Missouri had no employment records for Tasty Brands, International Products Group, Afshari Enterprises, and Club TV.

9

## THE FINANCIAL ACCOUNTS

25.     Your affiant worked with other investigators to identify and trace the funds obtained by Williams as proceeds of his fraud scheme. The investigative team has conducted a review of financial records associated with the investigation, including bank statements, bank deposit records, checks, cashier's checks, and any other financial records obtained during the course of the investigation, in order to trace funds related to the illegal activity and determine the origin of funds.

26.     Based on this investigation, your affiant discovered that Williams, or known associates of Williams, controlled at least seven bank accounts during the period of the fraudulent scheme that received fraudulent PPP loan proceeds from Lender, including:

| Account | Description | Account Information | Balance[2] |
|---------|-------------|---------------------|------------|
| Account #1 | First Community Credit Union account ending in #1705-70 held in the name of **Snappy's International Holdings LLC** | Opened 1/2018 Signors: Wilma Williams and Robert Williams | $1,434.23 |
| Account #2 | First Community Credit Union account ending in #6069-70 held in the name of **Club TV One LLC** | Opened 7/2020 Signors: Wilma Williams and Robert Williams | $27,882.77 |
| Account #3 | First Community Credit Union account ending in #7214-70 held in the name of **Afshari Enterprises LLC** | Opened 7/2020 Signors: Christopher McMiller | $103,622.58 |
| Account #4 | First Community Credit Union account ending in #5062-70 held in the name of **International Products Group** | Opened 7/2020 Signors: Joe Morris and Robert Williams | $228,518.00 |
| Account #5 | First Community Credit Union account ending in #4415-70 held in the name of **Tasty Brands Enterprize LLC** | Opened 7/2020 Signors: Wilma Williams and Robert Williams | $12,013.64 |

---

[2] The balances are reported as of 10/7/2020, with the exception of Account #6, which is reported as of 8/14/2020.

10

| Account #6 | UMB Bank account ending in #8055 held in the name of Phillip Lee Williams & Pamela Kay Williams | Opened 8/2020 Signors: Phillip Williams and Pamela Williams | $4,540.96 |

## Account #1: Snappy's International Holdings LLC (FCCU account ending in 1705-70)

27. Account #1 was opened in January 2018. Wilma Williams is the original signor on the account documents. Robert Williams was added as a signor in July 2020.

28. Between January 1, 2019, and July 3, 2020, there were 10 transactions conducted within this account, which consisted of transfers to/from other First Community Credit Union accounts and did not exceed $40.00 for any one transaction. The balance in the account on July 3, 2020 was $0.12.

29. On July 7, 2020, a wire transfer totaling $90,000.00 from "Great Rivers Community Capital" was deposited into the account. (Per justinepedersen.org-In April 1999, Justine Petersen founded Great Rivers Community Capital, a certified Community Development Financial Institution, as a wholly owned subsidiary. Also, the address listed on the wiring document is 1023 N. Grand Blvd., the same address as Justine Petersen Housing and Reinvestment Corp.) The wire contained the following memo: "Robert Williams Sr, PPP – Loan." These funds are the proceeds from the Snappy's International Holdings LLC PPP fraudulent loan.

30. The activity in the account following this deposit, from July 7, 2020, to August 31, 2020, consisted primarily of transfers to other First Community Credit Union accounts and cash withdrawals. On July 20, 2020, a wire transfer was made out of the account for $14,742.94 to North American Kitchen Solutions. The wire authorization form was signed by Robert Williams. The activity in the account does not contain any transactions typically indicative of an operating business, such as expenditures for payroll, utilities, or rent.

11

31.    As of October 7, 2020, the balance of Account #1 was $1,434.23.

32.    In sum, I believe that there is probable cause to seize all of the funds in Account #1 because the funds are subject to forfeiture as proceeds of wire fraud.

**Account #2: Club TV One LLC (FCCU account ending in 6069-70)**

33.    Account #2 was opened in July 2020. Robert Williams is the original signor on the account. Wilma Williams was added as a signor in August 2020.

34.    Between July 21, 2020, and August 7, 2020, there was minimal account activity. The balance in the account on August 7, 2020, was $232.77.

35.    On August 11, 2020, there was a $250,000 wire transfer from "Justine Petersen Housing And ..." which contained a memo stating: "Pamela Rue, PPP – PNC Loan" to Account #2. These funds are the proceeds from the Club TV One LLC PPP fraudulent loan. On the same day, Williams purchased cashier's check # 111244, dated August 11, 2020, from First Community Credit Union made payable to Pamela Rue in the amount of $20,000. The cashier's check was negotiated at Bank of America.

36.    The remaining activity in the account was minimal and does not contain any transactions typically indicative of an operating business, such as expenditures for payroll, utilities, rent, or supplies.

37.    As of October 7, 2020, the balance of Account #2 was $27,882.77.

38.    In sum, I believe that there is probable cause to seize all of the funds in Account #2 because the funds are subject to forfeiture as proceeds of wire fraud.

**Account #3: Afshari Enterprises LLC (FCCU account ending in 7214-70)**

39.    Account #3 was opened in July 2020. Christopher McMiller is the original signor on the account documents.

12

40.     Between July 30, 2020, and August 14, 2020, there was minimal activity in the account. The balance in the account on July 30, 2020 was $19.00

41.     On August 14, 2020, there was a $250,000 wire transfer from "Justine Petersen Housing And ..." which contained a memo stating: "Chris McMiller, PPP – PNC Loan". These funds are the proceeds from the Afshari Enterprises LLC PPP fraudulent loan.   (As will be explained in the forthcoming Account #5/Tasty Brands section: Robert Williams and Wilma Williams are the original signors on the account documents for this account.)

42.     On August 19, 2020, there was a $125,000 electronic transfer to Account #5. The remaining activity in the account does not contain any transactions typically indicative of an operating business, such as expenditures for payroll, utilities, rent, or supplies.

43.     As of October 7, 2020, the balance of Account #3 was $103,622.58.

44.     In sum, I believe that there is probable cause to seize all of the funds in Account #3 because the funds are subject to forfeiture as proceeds of wire fraud.

**Account #4: International Products Group (FCCU account ending in 5062-70)**

45.     Account #4 was opened in July 2020. Joe Morris is the original signor on the account documents. Robert Williams is added as a signor on the account in August 2020.

46.     Between July 13, 2020, and August 12, 2020, there was minimal activity in the account. The balance in the account on July 13, 2020 was $18.00

47.     On August 12, 2020, there was a $250,000 wire transfer from "Justine Petersen Housing And ..." which contained a memo stating: "Joe Morris, PPP – PNC Loan". These funds are the proceeds from the International Products Group PPP fraudulent loan.

48.     The day following this deposit, on August 13, 2020, was a transfer to First Community Credit Union account ending in 5072-75 held in the name of Joe Morris for $13,000.

13

The remaining activity in the account does not contain any transactions typically indicative of an operating business, such as expenditures for payroll, utilities, rent, or supplies.

49.    As of October 7, 2020, the balance of Account #4 was $228,518.00.

50.    In sum, I believe that there is probable cause to seize all of the funds in Account #4 because the funds are subject to forfeiture as proceeds of wire fraud.

## Account #5: Tasty Brands Enterprize LLC (FCCU account ending in 4415-70) and Account #6: Phillip and Pamela Williams (UMB Bank account ending in 8055)

51.    Account #5 was opened in July 2020. Robert Williams and Wilma Williams are the original signors on the account documents. Between July 8, 2020, and August 5, 2020, there was minimal activity in Account #5. The balance on August 4, 2020, was $500.00.

52.    Account #6 was opened in August 2020. Phillip Williams and Pamela Williams are the signors on the account documents. Prior to August 2020, the activity in Account #6 contains transactions typical of a personal checking account. The balance in the account on August 4, 2020, was $54.54.

53.    On August 5, 2020, there was a wire transfer in the amount of $186,000 from "Justine Petersen Housing And ..." which contained a memo stating: "Phillip Williams, PPP – PNC Loan" into Account #5. These funds are the proceeds from the Tasty Brands Enterprize LLC fraudulent PPP loan. Immediately following this deposit, on August 6, 2020, there was a wire transfer in the amount of $15,000 into to Account #6, which was funded by and through the fraudulent PPP loan.

54.    The remaining activity in Account #5 does not contain any transactions typically indicative of an operating business, such as expenditures for payroll, utilities, rent, or supplies. For example, there were several large transfers into other FCCU accounts, including Account #1.

14

On August 25, 2020, $27,000 in funds from Account #5 were used to purchase cashier's Check #25944, made payable to Olympic Motor Company, with the memo "Robert Williams Company Car".

55. The remaining activity in Account #6 also does not contain any transactions typically indicative of an operating business, such as expenditures for payroll, utilities, rent, or supplies. Most of the activity in this account consists of various retail purchases, checks, and cash withdrawals, none of which exceed $800. However, on August 11, 2020, check # 1000 (dated 8/6/2020) in the amount of $6,000 made payable to Bommarito Chevrolet Mazda was posted withdrawing funds from Account #6. The check is signed by Pamela Williams.

56. As of October 7, 2020, the balance of Account #5 was $12,013.64.

57. As of August 14, 2020 the balance of Account #6 was $4,540.96.

58. In sum, I believe there is probable cause to seize all of the funds in Account #5 because the funds are subject to forfeiture as proceeds of wire fraud, and up to $15,000 in Account #6 because the funds are subject to forfeiture as proceeds of wire fraud and as being involved in a money laundering transaction.

## CONCLUSION

59. Based on the information above, there is probable cause to believe that funds in the aforementioned financial accounts (Accounts #1 through #6), as set forth in Attachment A, are subject to criminal and civil forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461(c), as representing or deriving from proceeds of a fraudulent PPP loan scheme, and, as to Account #6, pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1), as being involved in a money laundering transaction.

15

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

J. Wade Beach
Special Agent
Federal Bureau of Investigation

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41 this __13th__ day of October, 2020.

*Patricia L. Cohen*

The Honorable Patricia L. Cohen
United States Magistrate Judge
Eastern District of Missouri

16

## ATTACHMENT A

### LIST OF PROPERTY TO BE SEIZED

1.  All money, funds, and financial instruments deposited or credited to First Community Credit Union account #920451705-70 held in the name of Snappy's International Holdings LLC

2.  All money, funds, and financial instruments deposited or credited to First Community Credit Union account #920556069-70 held in the name of Club TV One LLC

3.  All money, funds, and financial instruments deposited or credited to First Community Credit Union account #920557214-70 held in the name of Afshari Enterprises LLC

4.  All money, funds, and financial instruments deposited or credited to First Community Credit Union account #920555062-70 held in the name of International Products Group

5.  All money, funds, and financial instruments deposited or credited to First Community Credit Union account #920554415-70 held in the name of Tasty Brands Enterprize LLC

6.  Up to $15,000 in money, funds, and financial instruments deposited or credited to UMB Bank account #9847988055 held in the name of Phillip Lee Williams & Pamela Kay Williams

1

**EXHIBIT A – Listed Address for Snappy's International**

## 5662 Martin Luther King Blvd, St. Louis, MO 63140

 

 

**EXHIBIT B – Listed Address for Tasty Brand's**

**8422 N. Lindbergh Blvd., St. Louis, MO. 63031**

 

 

**EXHIBIT C – Listed Address for International Products Group**

## 2501 Minnesota Ave, St. Louis, MO 63104

 



**EXHIBIT D – Listed Address for Club TV One LLC**

626 S. Fillmore Ave, St. Louis, MO, 63122

 

**EXHIBIT E – Listed Address for Afshari Enterprises LLC**

### 3160 Pershall Rd, St. Louis, MO 63136

